IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-00303-CMA-SKC

RAUL GONZALEZ, individually and on behalf of all others similarly situated,
AARON TOWNE, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

MICHAEL SCHNELL, and
CHRIS CHALLIS,

    Defendants.

---

**ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND SERVICE AWARDS**

---

This matter is before the court on Plaintiffs' Motion for Default Judgment as to Defendant Michael Schnell (Doc. # 50) and Motion for Attorney Fees, Costs, and Service Awards (Doc. # 51). The Motion for Default Judgment is granted and the Motion for Attorney Fees, Costs and Service Awards is granted in part and denied in part.

## I.     BACKGROUND

This is an action for recovery of unpaid wages and overtime compensation under the Fair Labor Standards Act ("FLSA"). Defendant, Michael Schnell, was a 75% owner of Legion Rig Services, LLC ("Legion Rig"), an oil and gas rig services company that operated out of Lucerne, Colorado. (Doc. # 24 at 2, 5; Doc. # 49 at 1.) Plaintiffs initiated the instant case with their Individual and FLSA Collective Action Complaint (Doc. # 1)

on February 5, 2020. Therein, they brought claims against Defendant Schnell individually in his role as an employer under the FLSA. (*Id.*) Plaintiffs allege that Defendant Schnell employed the workers at Legion Rig at all times relevant to the Complaint and that he failed to pay his employees minimum wages and overtime compensation for work they performed during September and October 2019. (Doc. # 24 at 4–6.)

On August 18, 2020, Plaintiffs moved to conditionally certify a class for collective action under the FLSA. (Doc. # 32.) The Court granted their motion on November 25, 2020, and conditionally certified a FLSA collective action of "all persons who performed hourly services as workers for Defendant Schnell for their regular and overtime hours during the months of September and October 2019 at Legion Rig but who were not paid for such work." (Doc. # 37 at 7.) The Court also approved Plaintiffs' proposed Notice of Collective Action Lawsuit (Doc. # 32-4) and authorized a notice period of 75 days. (Doc. # 37 at 7.) After receiving notice, 11 former employees submitted timely consents to participate as class members in this action, and 8 of those employees provided declarations setting forth damages. (Doc. # 50 at 3; Doc. # 46.)

Defendant Schnell initially retained counsel and filed an answer in this case. (Doc. ## 6, 7.) However, after that filing, Defendant Schnell repeatedly failed to appear, failed to respond to any of Plaintiffs' outstanding discovery requests or Amended Complaint (Doc. # 24), and failed to respond to various court orders.[1] Plaintiffs filed a

---

[1] On January 20, 2020, Magistrate Judge S. Kato Crews ordered Defendant Schnell to show cause in writing by January 30, 2020:

Motion for Discovery Sanctions (Doc. # 34) pursuant to Fed. R. Civ. P. 37. The Court thereafter entered an Order Granting in Part and Denying in Part Plaintiffs' Motion for Sanctions (Doc. # 47). In that Order, the Court directed the Clerk of Court to issue an entry of default as to Defendant Schnell and set a deadline of March 22, 2021, for Plaintiffs to file a Motion for Default Judgment.

The Clerk of Court issued the entry of default against Defendant Schnell on February 19, 2021. Plaintiffs then filed the instant Motion for Default Judgment (Doc. # 50) and a separate Motion for Attorney Fees, Costs, and Service Awards (Doc. # 51) on March 22, 2021. Also on March 22, 2021, Defendant Schnell submitted a 3-page Motion to Dismiss the Case in its Entirety. (Doc. # 49.)

Plaintiffs request (1) $38,269.98 for back minimum wages; (2) $38,269.98 for liquidated damages; (3) $72,087.50 for attorney fees; (4) $732.39 for costs; and (5) $10,000 in service awards, $5,000 each to named Plaintiffs Gonzalez and Towne. (Doc. # 50 at 6–7.) In total, Plaintiffs seek a judgment award of $159,359.85. (*Id.* at 7.)

## II.     LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, courts must enter a default judgment against a party that has failed to plead or otherwise defend an action brought

---

> [W]hy default judgment should not enter against him, or why other sanctions should not be imposed against him, for his: (1) failure to appear at the January 20, 2021 discovery conference; (2) failure to respond to Plaintiffs' second set of discovery requests; (3) failure to answer the amended complaint; (4) failure to respond to Plaintiffs' first set of written discovery requests; (5) failure to confer over discovery disputes in accordance with the magistrate judge's applicable standards; and (6) failure to comply with District Judge Arguello's Order [37] dated November 25, 2020.

To date, Defendant Schnell has not responded to this Order to Show Cause.

3

against it. Fed. R. Civ. P. 55(b)(2). Default judgment may be entered by the clerk of court if the claim is for "a sum certain." Fed. R. Civ. P. 55(b)(1). In all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (quoting *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997)). Default judgment is typically available "only when the adversary process has been halted because of an essentially unresponsive party." *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (quotation omitted). "In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment serves as such protection." *Id.* (quotation omitted).

### III.  ANALYSIS

Before granting a motion for default judgment, the Court must ensure that it has subject matter jurisdiction over the action and personal jurisdiction over the defaulting defendant. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986). Next, the Court should consider whether the well-pleaded allegations of fact—which are admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant. *See Olcott*, 327 F.3d at 1125 (stating that upon default, the defendant admits the plaintiff's allegations); *see also Person. Indus. Loan Corp. v. Forgay*, 240 F.2d 18, 20 (10th Cir. 1956) ("By failing to appear and permitting a default judgment to be entered, [defendant] admitted only facts well pleaded."). "The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits."

4

*Bricklayers & Trowel Trades Int'l Pension Fund v. Denver Marble Co.*, No. 16-cv-02065-RM, 2019 WL 399228, at *2 (D. Colo. Jan. 31, 2019).

## A.     JURISDICTION

Plaintiffs assert claims under the FLSA, a duly enacted law of the United States. (Doc. # 24.) Accordingly, the Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1337(a).

The Court also finds that it has personal jurisdiction over Defendant Schnell. The record demonstrates that Defendant Schnell was adequately served and that, in any event, he has waived any defense of insufficient service of process or lack of personal jurisdiction by failing to raise such a defense in his Answer or a motion to dismiss. (Doc. ## 7, 50); *see* Fed. R. Civ. P. 12(h). Moreover, the Court finds that exercising jurisdiction over Defendant Schnell, a resident of Canada, comports with constitutional due process demands. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). It is undisputed that Defendant Schnell had a 75% ownership share of Legion Rig, a company with its principal place of business in Colorado. (Doc. # 24 at 4–5; Doc. # 49 at 1.) Defendant Schnell acknowledges that he "stepped in" and "took corrective action of firing [the] CEO" in August 2019 (Doc. # 49 at 2), and Plaintiffs maintain that Defendant Schnell "managed, ran, owned, operated, and controlled Legion Rig" during the relevant time period (Doc. # 24 at 4). Defendant Schnell also states that he visited the business in Colorado in July 2019. (Doc. # 49 at 2.) Thus, Defendant Schnell has sufficient "minimum contacts" with Colorado and exercising personal jurisdiction over him would not "offend traditional notions of fair play

5

and substantial justice." *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Court additionally finds that a substantial part of the events or omissions giving rise to the claims set forth in this lawsuit occurred within the State of Colorado. Accordingly, the jurisdictional prerequisites are satisfied in this case.

**B.     FAILURE TO DEFEND**

In the Order Granting in Part and Denying in Part Plaintiff's Motion for Sanctions, the Court found that it is "manifest from the record that Defendant Schnell has defaulted." (Doc. # 47 at 2.) The Clerk of Court entered a default against Defendant Schnell the same day. (Doc. # 48.)

The Court finds that Defendant Schnell's Motion to Dismiss (Doc. # 49), submitted *pro se* on March 22, 2021, does not salvage this case from default judgment.[2] In his Motion, Defendant Schnell does not show cause for his various failures to appear, failures to respond, and failures to comply with court orders. He also does not cite any applicable legal standard supporting dismissal. Instead, he requests that the Court "dismiss the case in entirety due to the lack of proof that [he], the shareholder, should be [held] responsible." (Doc. # 49 at 3.)

To date, Defendant Schnell has still failed to respond to the Order to Show Cause. He has also failed to respond to the instant Motion for Default Judgment (Doc. #

---

[2] Defendant Schnell's counsel withdrew on August 3, 2020. (Doc. ## 29, 31.) Since then, Defendant Schnell has proceeded *pro se*. The Court, therefore, reviews his pleading "liberally and hold[s] [it] to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007).

50) and to Plaintiffs' Motion for Attorney Fees, Costs, and Service Awards (Doc. # 51.) He has not filed anything since March 2021. Accordingly, the Court finds that Defendant Schnell has failed to defend this action.

**C.    LIABILITY**

The Court finds that Plaintiffs' Amended Complaint (Doc. # 24), Motion to Certify Class Conditionally (Doc. # 32) and attachments thereto, and the Filing of Consents to Join (Doc. # 46) provide a "sufficient basis in the pleadings" for default judgment to be entered. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Accepting the well-pled allegations in the Amended Complaint as true, the Court finds that the allegations support entry of default judgment against Defendant Schnell on Plaintiffs' unpaid wages and overtime compensation claims under the FLSA. *See* 29 U.S.C. § 201, *et seq.* First, Plaintiffs have alleged that Defendant Schnell was their employer at Legion Rig at all times relevant to the complaint. (Doc. # 24 at 6.) Information provided by Plaintiffs and Defendant Schnell support a finding that Defendant Schnell owned a 75% share of Legion Rig, had terminated the CEO, and had taken over daily operations of the company during September and October 2019. (Doc. # 24 at 6; Doc. # 49 at 1–2.) Plaintiffs have also alleged that they worked non-overtime and overtime hours during September and October 2019 for which they were never paid. (Doc. # 24 at 9–10.) After considering the allegations in the Amended Complaint, the consents and Declarations of the class members, Defendant Schnell's statements in his Motion to Dismiss, and all other relevant pleadings and applicable law, the Court

7

finds that Defendant Schnell failed to pay minimum wages and overtime compensation to Plaintiffs in September and October 2019 in violation of the FLSA and is liable to them for damages.

**D.     DAMAGES**

Default judgment cannot be entered until the amount of damages has been ascertained. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). One of the main reasons for this requirement is to prevent plaintiffs who obtain default judgments from receiving more in damages than is supported by actual proof. *Id.* at 773 n.2. Rule 55(b) provides that "the court may conduct hearings or make referrals" as it deems necessary in order to "determine the amount of damages." A court may enter a default judgment without a hearing when, as is the case here, "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Eighth Dist. Elec. Pension Fund v. Campbell Elec., Inc.*, No. 16-cv-03040-CMA, 2017 WL 1243059, at *2 (D. Colo. Mar. 17, 2017) (quoting *Held v. Shelter Sys. Grp. Corp.*, No. 93-1225, 16 F.3d 416, 1994 WL 47157, at *1 (10th Cir. 1994)). In making an independent determination of the amount of damages, "the court may rely on detailed affidavits or documentary evidence." *Chisolm v. Global Graphics & Designs Inc.*, No. 20-cv-00344-PAB-SKC, 2021 WL 4426951, at *1 (D. Colo. Sept. 27, 2021) (quoting *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010)).

Under the FLSA, Defendant Schnell is liable to Plaintiffs for unpaid minimum wages, unpaid overtime compensation, and an additional equal amount as liquidated

damages. 29 U.S.C. § 216(b); *see Mumby v. Pure Energy Servs.*, 636 F.3d 1266, 1272 (10th Cir. 2011) (noting that the liquidated damages provision essentially doubles plaintiffs' damage award). The federal minimum wage, for purposes of unpaid wage damages under the FLSA, is $7.25 per hour. 29 U.S.C. § 206(a)(1). Overtime compensation is calculated "at a rate not less than one and one-half times the regular rate at which the employee is actually employed." 29 C.F.R. §778.107; *see Chavez v. City of Albuquerque*, 630 F.3d 1300, 1313 (10th Cir. 2011) (stating that the FLSA requires "one and one-half" times the employee's regular rate for each overtime hour worked).

The Court finds that Plaintiffs' requests for damages are capable of mathematical calculation and supported by detailed affidavits such that no hearing is required in this case. *See* (Doc. # 50-2.) Defendant Schnell has not responded to any request for documentation regarding unpaid wages and has offered no proof as to hours or amounts. The Court therefore calculates the following damages based on the sworn Declarations provided by Plaintiffs.[3]

- Plaintiff Victor Baray declares he worked 120 unpaid regular hours (120 hours x $7.25 federal minimum wage = $870) and 31.5 overtime hours at an overtime rate of $48 (31.5 overtime hours x $48 overtime rate = $1512)

---

[3] 11 members of the class submitted consent forms, but only 8 members have provided declarations asserting their hours worked and overtime rates. A corresponding declaration submitted by Plaintiffs' counsel indicates that 1 member did not submit a declaration or provide damages information and 2 other members understood they would not proceed as part of the FLSA Collective in this action. (Doc. # 52-2.) Accordingly, the Court will calculate damages only for those 8 members who submitted declarations.

9

  as a haul truck driver. (Doc. # 50-2 at 4–6.) Plaintiff Baray thus asserts he is owed $2,382 in unpaid minimum wages and overtime compensation and $2,382 in liquidated damages, for a total of $4,764.

- Plaintiff Earl Eugene Bolin declares he worked 120 unpaid regular hours (120 hours x $7.25 federal minimum wage = $870) and 75 overtime hours as a pilot driver. (Doc. # 50-2 at 7–8.) He states he should have been paid $1,200 for each week that he worked 65 hours. Based on Plaintiff Bolin's Declaration, the Court calculates his overtime rate at $27.69 (75 overtime hours x $27.69 overtime rate = $2,076.75).[4] Plaintiff Bolin thus asserts he is owed $2,946.75 in unpaid minimum wages and overtime compensation and $2,946.75 in liquidated damages, for a total of $5,893.50.

- Plaintiff Robert Esterline declares he worked 160 unpaid regular hours (160 hours x $7.25 federal minimum wage = $1,160) and 176 overtime hours at a rate of $40.50 (176 overtime hours x $40.50 overtime rate = $7,128) as a pole-truck/gin-truck driver. (Doc. # 50-2 at 9–10.) Plaintiff Esterline thus asserts he is owed $8,288 in unpaid minimum wages and overtime compensation and $8,288 in liquidated damages, for a total of $16,576.

- Plaintiff Raul Gonzalez declares he worked 64 unpaid regular hours (64 hours x $7.25 federal minimum wage = $464) and 35 overtime hours at a

---

[4] The Court calculates Plaintiff Bolin's regular rate by "dividing [his] salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113; *see Chavez*, 630 F.3d at 1311–12.

10

    rate of $45 (35 overtime hours x $45 overtime rate = $1,575) as a shop foreman. (Doc. # 50-2 at 11–13.) Plaintiff Gonzalez thus asserts he is owed $2,039 in unpaid minimum wages and overtime compensation and $2,039 in liquidated damages, for a total of $4,078.

- Plaintiff John Hedges declares he worked 168 unpaid regular hours (168 hours x $7.25 federal minimum wage = $1,218) as a load operator/dispatcher. (Doc. # 50-2 at 14–16.) Plaintiff Hedges thus asserts he is owed $1,218 in unpaid minimum wages and $1,218 in liquidated damages, for a total of $2,436.

- Plaintiff Samuel Maldonado declares he worked 80 unpaid regular hours (80 hours x $7.25 federal minimum wage = $580) and 40 overtime hours at a rate of $45 (40 overtime hours x $45 overtime rate = $1,800) as a mechanic. (Doc. # 50-2 at 17–19.) Plaintiff Maldonado thus asserts he is owed $2,380 in unpaid minimum wages and overtime compensation and $2,380 in liquidated damages, for a total of $4,760.

- Plaintiff Eric Tornquist alleges he worked 160 unpaid regular hours (160 hours x $7.25 federal minimum wage = $1,160) and 120 overtime hours at a rate of $115.38 (120 overtime hours x $115.38 overtime rate = $13,845.60) as a manager. (Doc. # 50-2 at 20–21.) Plaintiff Tornquist thus asserts he is owed $15,005.60 in unpaid minimum wages and overtime compensation and $15,005.60 in liquidated damages for a total of $30,011.20.

- Plaintiff Aaron Towne declares he worked 120 unpaid regular hours (120 hours x $7.25 federal minimum wage = $870) and 62.5 overtime hours at a rate of $50.25 (62.5 overtime hours x $50.25 overtime rate = $3,140.63) as a winch truck driver and metal fabricator. (Doc. # 52-2 at 22–25.) Plaintiff Towne thus asserts he is owed $4,010.63 in unpaid minimum wages and overtime compensation and $4,010.63 in liquidated damages for a total of $8,021.26.

In total, the Court calculates that Plaintiffs are owed $38,269.98 in unpaid wages and overtime compensation. They are also owed $38,269.98 in liquidated damages pursuant to the FLSA. The Court therefore calculates damages at $76,539.96.

### E. ATTORNEY FEES

The FLSA also permits the award of reasonable attorney fees and costs. 29 U.S.C. § 216(b). Plaintiffs filed a Motion for Attorney Fees, Costs, and Service Awards (Doc. # 51), wherein they seek attorneys' fees of $72,087.50, costs of $732.39, and a service award of $5,000 to each of the two named plaintiffs, for a total of $82,819.89. (*Id.* at 1.) Because Defendant Schnell has not responded to Plaintiffs' motion, the Court lacks the benefit of scrutiny and analysis from the opposing party. Nonetheless, the Court has a duty to ensure that the request for attorney fees is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).

Determination of the amount and reasonableness of an attorney's fees is within this Court's discretion. *Wright v. U-Let-Us Skycap Servs., Inc.*, 648 F. Supp. 1216, 1218 (D. Colo. 1986). When evaluating a motion for fees and costs, the Court follows the

three-step process set forth in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987). The Court (1) determines the number of hours reasonably spent by counsel; (2) assesses the reasonableness of the hourly rate of compensation; and (3) multiplies the reasonable hourly rate by the number of hours expended to determine the "lodestar" amount. *Id.* at 555–56. The Court "need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'" *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986)).

In determining the reasonableness of the hours expended, a court considers several factors, including: (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to specific task. *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 538, 542 (10th Cir. 2000) (citing *Ramos*, 713 F.2d at 553–54). Counsel has the burden of proving hours to the district court by "submitting meticulous, contemporaneous time records." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty.*, 157 F.3d 1243, 1250 (10th Cir. 1998). Once the court has adequate time records before it, "it must then ensure that the winning attorney has exercised 'billing judgment.'" *Id.* (quoting *Ramos*, 713 F.2d at 553). "Billing judgment

13

consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.*

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy*, 73 F.3d at 1018. The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998) (quoting *Malloy*, 73 F.3d at 1018). Additionally, tasks that are easily delegable to non-professionals or less experienced associates should not be billed at a higher hourly rate. *N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co.*, 72 F.3d 830, 835 (10th Cir. 1996); *see also Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) ("Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates."); *Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA) Inc.*, No. 08-cv-02750-MSK-KMT, 958 F. Supp. 2d 1238, 1258–59 (D. Colo. July 23, 2013) (reducing partner fees after finding there was an "over-reliance on partners, rather than lower-cost associates, to prepare many aspects of the case" that was "not justified by the complexity of the case").

Counsel for plaintiffs submit that they worked 138.55 hours on the instant case. (Doc. # 51 at 3.) They assert that David H. Miller, a managing partner with more than 40

14

years of experience, "did well over 95% of the work" in this case and should thus be compensated at an hourly rate of $625 per hour for 110 billed hours. (*Id.* at 6.) In support of Mr. Miller's $625 per hour rate, counsel has provided the Declaration of David H. Miller (Doc. # 51-1) and the Declaration of Paula Greisen, an experienced labor and employment attorney in Denver (Doc. # 51-3). Counsel for plaintiffs also request an hourly rate of $450 for 11.10 hours billed by Adam M. Harrison, a lawyer with 10 years of experience, and an hourly rate of $150 for 26.45 hours submitted by paralegal Leroy Moya. (Doc. # 51-2.)

The Court finds the number of hours and the rate charged by Mr. Miller to be unreasonable in this case. In doing "over 95% of the work," Mr. Miller logged many tasks that could have been billed at an associate-level rate or otherwise delegated. For example, Mr. Miller requests compensation at his $625 rate for 4.5 hours spent on "Research for most recent case law on cert in similar cases." (Doc. 51-2 at 2) (Ref # 58). Mr. Miller also submitted multiple "block billing" entries that include research or other tasks that should have been charged at a lower rate:

- 2.75 hours for "**Research memo** on whether Schnell satisfies individual liability factors under FLSA. Conf with AH re same and discussion re complaint draft by AH." (Doc. # 51-2 at 1) (Ref # 15)
- 4.75 hours for "Finish drafting of military service declaration and drafting of motion for default judgment after review of FRCP 55 and Local Rules. 3.0. **Case law research** re Leonard v. McMorris in federal courts and testimony in the absence of corporate records re Boyer case. 1.75."

15

(Doc. # 51-2 at 3) (Ref # 12).

- .5 hours for "**Research** Hague Convention and service issues." (Doc. # 51-2 at 3) (Ref # 20).

- 4.75 hours for "**Begin drafting motion for conditional certification: fact section**." (Doc. # 51-2 at 2) (Ref # 56).

In Mr. Miller's Declaration, he reports that he was a founding partner at the Sawaya & Miller Law Firm and has worked there since 2011 as an employment lawyer focused on wage and hour class actions. (Doc. # 51-1 at 2.) Given that wealth of experience, the time Mr. Miller spent on research and other tasks that do not require highly priced talent seems excessive.

The Court also finds that Mr. Miller logged entries at his $625 per hour rate that are duplicative of entries by paralegal Leroy Moya and entries for work that is either entirely non-compensable or should have been billed at a paralegal rate. For example, Mr. Miller requests compensation for .5 hours on January 22, 2021 for "Draft notice letter to class members re 2/8/21 deadline for filing consents. **Arrange for mailing/service**." (Doc. # 51-2 at 3) (Ref # 77). On the same day, paralegal Leroy Moya billed 1 hour for "Prepare Notice (2nd) to send to 45 prospective collective members" and .75 hours for "**Mail 2nd notice** to 45 prospective collective members." (Doc. # 51-2 at 4) (Ref ## 9, 98). On other entries, Mr. Miller logged time that included filing documents with the court. *See* (Doc. # 51-2) (Ref # 31, 32, 50, 51, 52). Purely clerical or secretarial tasks, such as mailing and e-filing, are not compensable at a paralegal rate, let alone a managing partner rate. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288

16

n.10 (1989) ("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").

The Court also finds that Mr. Miller's $625 per hour rate is not reasonable in this case. Aside from the Declaration of Ms. Greisen, wherein Ms. Greisen asserts that her own hourly rate is $575 (Doc. # 51-3 at 2), Plaintiffs' counsel does not provide support for $625 as the prevailing market rate in Denver for an experienced labor and employment attorney. Plaintiffs' counsel does not point to any FLSA case in the U.S. District Court in Denver where a court has approved such a high rate. *See Wilson v. Schlumberger Tech. Corp.*, No. 17-cv-00281-RBJ, 2021 WL 2311667, at *6 (D. Colo. June 7, 2021) (reducing the requested rates of $550 per hour for a senior partner and $350 per hour for a junior partner who litigated a successful FLSA collective action trial to $390 and $275 per hour, respectively); *Geiger v. Ultimate Self Defense Studios LLC.*, No. 14-cv-00240-REB-NYW, 2017 WL 11550109, at *5 (D. Colo. July 6, 2017) (approving a $300 per hour rate in an FLSA collective action); *see also Chung v. Lamb*, No. 14-cv-03244-WYD-KLM, 2017 WL 10619940, at *3 (D. Colo. Jan. 12, 2017) (surveying attorney fee rates in the District of Colorado).

Finally, the Court notes that this is a fairly run-of-the-mill FLSA collective action for unpaid wages. The case was almost entirely undefended and is concluding in a default judgment entered against Defendant. While the Court is sympathetic to the frustration and delay caused to Plaintiffs' counsel by Defendant Schnell's lack of responsiveness and unwillingness to meet deadlines or otherwise engage in this litigation, the Court is also mindful that this case never meaningfully entered the

discovery stage and did not present particularly novel or complex issues.

For the foregoing reasons, the Court finds that Plaintiffs' attorney fee request of $72,087.50 is excessive and warrants a 50% reduction. The Court thus awards Plaintiffs attorney fees of $36,043.75. The Court finds that Plaintiffs' request for costs of $732.39 is reasonable and awards the same. *See* 29 U.S.C. § 216(b); *Hensley*, 461 U.S. at 444. Finally, the Court approves a service award of $5,000 each to named plaintiffs Raul Gonzalez and Aaron Towne for the work they undertook to prosecute this action.

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Plaintiffs' Motion for Default Judgment (Doc. # 50) is GRANTED;

- Plaintiffs' Motion for Attorney Fees, Costs, and Service Awards (Doc. # 51) is GRANTED as set forth in this Order;

- Plaintiffs are entitled to the amounts of $76,539.96 in damages and $46,776.14 in attorney fees, costs, and service awards;

- the Clerk of Court is DIRECTED to enter final judgment in favor of Plaintiffs and against Defendant Michael Schnell in the total amount of $123,316.10.

It is FURTHER ORDERED that Defendant's Motion to Dismiss (Doc. # 49) and Plaintiffs' Motion for Hearing/Conference (Doc. # 58) are DENIED as moot.

The Clerk of Court is directed to close this case.

DATED: November 2, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge